## HARRIS v. STATE.

(Division A.   Dec. 16, 1929.)

[125  So.  253.  No.  28260.]

Morris & Wingo, of Hattiesburg, for the appellant.

**W. A. Shipman,** Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

In the county court Harris, the appellant, was convicted of, and sentenced for, the unlawful sale of intoxicating liquor, from which conviction and sentence he appealed to the circuit court, where the case was affirmed; and appeal is prosecuted here.

There was ample evidence to sustain the conviction, and while a number of errors are assigned, all save one are absolutely without merit. This assignment of error is as follows: ''The court erred in overruling the motion to quash the jury.'' The record discloses that a motion ''to quash the jury'' was made in another case called prior to the time this case was called, and that it was overruled by the county court; and the same motion was made in this case.

The record shows that the motion was based on the idea that twenty were drawn as jurors for that week; that the sheriff did not make his return on the venire

facias until the case was called for trial; that the sheriff had, before court convened, notified a number of citizens to be present in court, and they were there; that there were sixteen of the twenty jurors drawn and summoned; that the court excused eight of this number for various reasons, and, according to the evidence of the circuit clerk, the remaining eight were then present and impaneled on the jury. Counsel for appellant says only seven of the original panel remained on the jury. It is immaterial as to whether it was seven or eight, the rest of the jury and talesmen were called by the sheriff from the men present who had been summoned by him to be present on the convening of court. The sheriff testified that he usually pursued this course in anticipation that a sufficient number of jurors would not be obtained from the regular quota. The court dictated a statement into the record that it had instructed the sheriff to pursue this course, because of the delay in getting jurors in case there was a deficiency, and that this was its custom.

The gravamen of appellant's complaint here is that men directed by the sheriff to attend court in advance thereof and calling them to fill in the panel was not in compliance with the statute, such men so called not being bystanders within the meaning of the statute, otherwise there is no contention here that the jurors who tried this case were not competent, fair and impartial, qualified, and legally impaneled. The judge of the court had nothing to do with selecting any particular man called to serve; the sheriff did this.

We do not think the action of the court and the sheriff in thus impaneling the jury in this cause was irregular. No hint of actual fraud appears in this record. The appellant was denied no substantial right; no substantial departure from the provisions of the applicable statutes was had; and no legal fraud was imposed on the appellant.

Section 735, Hemingway's Code 1927, section 8, chapter 131, Laws 1926, provides that twenty names shall be drawn from the jury box in a manner provided by law for the drawing of jurors in the circuit court. This was done; they were all served by the sheriff with process, sixteen of the twenty appeared in court, and eight or nine were excused by the court on showing to which no objection was made. Section 726, Hemingway's Code 1927, section 2, chapter 131, Laws 1926, provides that the rules of pleading, practice, and procedure shall be those now or hereafter established as governing the several other courts as respect the several matters mentioned; that is, a suit of which the chancery court theretofore had jurisdiction would be tried as if in that court, and likewise as to the justice of the peace court and the circuit court.

Section 2359, Hemingway's Code 1927, section 2712, Code 1906, provides as follows: "After the drawing of the grand jury, the remaining jurors in attendance shall be impaneled into two petit juries for the first week of court if there be a sufficient number left, and, if not, the juries may be completed from the bystanders, or the court may direct a sufficient number for that purpose to be drawn and summoned; but if there be more than enough jurors for the two juries, or for one jury if the court shall direct only one to be impaneled, the excess may be discharged, or they may be retained, in the discretion of the court, to serve as talesmen; and, if so retained, they shall have the privilege of members of the regular panel, of exemption from service."

Section 2361, Hemingway's Code 1927, section 2714, Code 1906, is in this language: "If at any regular or special term of a circuit court it appear that jurors have not been drawn or summoned for the term, or for any part thereof, or that the jurors have been irregularly drawn or summoned, or that none of the jurors so drawn

or summoned are in attendance, or not a sufficient number to make the grand jury and two petit juries, the court shall immediately cause the proper number of jurors to be drawn from the box and summoned, or, if there be not a jury box to be drawn from, the court shall direct the requisite number of persons, qualified as jurors, to be summoned to appear at such time as the court shall appoint, and the court shall thereupon proceed as if the jurors had been regularly drawn and summoned.''

Section 2363, Hemingway's Code 1927, section 2716, Code 1906, provides: ''A challenge to the array shall not be sustained, except for fraud, nor shall any venire facias, except a special venire facias in a criminal case, be quashed for any cause whatever.''

Section 2365, Hemingway's Code 1927, section 2718, Code 1906, provides: ''All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely; and a jury listed, drawn, summoned, or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn; and shall have the power to perform all the duties devolving on the jury.''

Appellant's argument that the regular jurors drawn were summoned by the sheriff within less than five days of the convening of court is certainly barren of merit applying the last-named section thereto.

The only other point which seems to be urged in the briefs is that when the court discovered that there would be an insufficient number to complete the jury after excuses, legal or otherwise, were offered, then the whole court should suspend, procure the regular jury box, and draw therefrom a number sufficient in the judgment of the court, and await the action of the sheriff in getting jurors from possibly remote parts of the county and ignore section 2359, which section seems to have been written especially to meet the situation which confronted

the court in this case and which was followed in spirit, if not to the letter, in the instant case.

The legislature evidently had in mind the matter of expense to the county in limiting the number of jurors to be drawn for each week of the term of a county court to twenty. These jury statutes have been under consideration many times by this court, and this court seems to have recognized that these statutes are directory; that the panel should not be quashed except for fraud, actual or legal, and unless there was a total departure from the prescribed, definite course as outlined by the several statutes as to listing, drawing, summoning, and impaneling. Head v. State, 44 Miss. 731; Gavigan v. State, 55 Miss. 533; Lipscomb v. State, 76 Miss. 223, 25 So. 158; Buchanan v. State, 84 Miss. 332, 36 So. 388; Posey v. State, 86 Miss. 141, 38 So. 324, 4 Ann. Cas. 221; Cook v. State, 90 Miss. 137, 43 So. 618; Ferguson v. State, 107 Miss. 559, 65 So. 584; McVey v. State, 117 Miss. 243, 78 So. 150; Atkinson v. State, 137 Miss. 42, 101 So. 490; Lee v. State, 138 Miss. 474, 103 So. 233; Shepherd v. State, 89 Miss. 147, 42 So. 544, 10 Ann. Cas. 963; Ellis v. State, 142 Miss. 468, 107 So. 757; Rhodman v. State (Miss.), 120 So. 201; and Albert Morrison v. State (No. 28240), 124 So. 362, 364, decided by this court November 11, 1929. The Rhodman and Morrison cases, supra, are the strongest cases that could possibly be cited from the above list, but appellant does not cite them. However, we call attention to them.

In the Rhodman case, the trial judge discharged the panel which had been in service for the week, and having left no jurors for the balance of the week, the judge took the poll books, selected therefrom eighteen names, and commanded the sheriff to summon these men so selected to serve as jurors for the balance of the week. The sheriff obeyed this command, and from the eighteen persons so selected and summoned the jury which tried Rhodman

was impaneled. Judge Anderson said the county judge had picked the jury from the poll books and totally departed from the jury laws controlling, that there was no attempt to follow the jury laws, and that such action was wholly beyond and outside the law, a proceeding directly in the face of the statute.

In the Morrison case, supra, the jurors respectively had been regularly selected, listed, and drawn for the first, second, third, and fourth weeks of a term of circuit court, and their names recorded for each particular week, and they had been so summoned. On the first day of the third week, Morrison was arraigned on an indictment for murder to which he pleaded not guilty, and thereupon the court set the case for trial on Tuesday of the fourth week. The appellant, Morrison, relying on his confidence in the regular jurors thus theretofore listed, drawn, and summoned to appear and act as jurors for the fourth week, decided to rely thereon and did not request a special venire, as was his option. When the day for the trial came, it appeared that the sheriff omitted to call eight of those jurors for that week—perhaps twelve. It then was discovered that the sheriff, during the second week of the court, had sent out and called into service as jurors for the second week these fourth-week jurors and they were actually used as jurors for the second week. He excused them from further service. Having thus depleted the panel for the fourth week and having by his action created the necessity for additional jurors for the fourth week, he proceeded on Friday, Saturday, and Monday prior to the call of this case for trial, to select and summon others instead of the regular panel, and thus of his own selection filled in the quota required for the fourth week. Morrison, when he discovered this unusual situation—that he was not to be tendered the lawful jurors upon which he had relied and had a right to rely—objected thereto and asked for a

special venire in view of this altered panel, which was refused by the court; and to all of which proceeding the appellant then made timely objection and exception.

Judge GRIFFITH, as organ of the court, stated that the sheriff had purposely brought about this deficiency of the jurors for the fourth week, so that in spite of the statute he (the sheriff) selected jurors of his own selection and choosing and purposely depleted the available lawful jurors from among whom the defendant then had a right to expect that he would be tried. In this behalf, Judge GRIFFITH said: "It constituted a purposeful and intentional departure from the fundamental requirements of the statutes, and is not within the intent of any curative provision thereof. We do not deem it necessary, beyond what we have already said, to add anything further to the opinions, and the applications of the principles made, in Cook v. State, 90 Miss. 137, 43 So. 618, and Rhodman v. State (Miss.), 120 So. 201, and the cases relied on in those opinions."

In the Morrison case the action of the sheriff, so far as Morrison was concerned, constituted a legal if not an actual fraud upon him—deprived him of a substantial right and entrapped him into waiving a special venire. By his action above detailed, he made it certain he (the sheriff) would certainly substitute jurors of his own choosing by displacing those lawfully chosen. In a capital case the right or option to have a special venire is an important one; also the defendant in that case has a vital, fundamental right to look with grave concern to the lawfully drawn, listed, and summoned jurors to try all cases, and especially his case, and not to be entrapped into a substitution thereof by any other person in the world be he ever so honest or capable.

In the Rhodman case, supra, we note that the judge of the county court hand-picked the jury and substituted his own selection for that which was stipulated and provided. We are of opinion that neither of these cases

announce any other or different rule from that announced in the Cook case, supra, and fall clearly within the rule clearly expounded by that case.

Adhering to this rule, we do not think the action of the county court in the instant case falls within the condemnation of that rule. The action of the county court in this case was the plain way blazed in section 2359, Hemingway's Code 1927. That court had no grand jury to impanel. When the venire was exhausted, the court could have pursued either of two courses—direct the sheriff to fill the panel from the bystanders, or to draw from the regular jury box a sufficient number of names and have the sheriff summon those so drawn. In this state of case, either was proper or legal; and when either course is pursued without fraud, it is not subject to criticism. Within the writer's observation at the bar for more than thirty-five years, the circuit judges have pursued the course here followed by the county court judge, and we think this course has generally been followed by the circuit judges of the state.

The sheriff filled the panel with competent jurors from men whom he had previously asked to be at court. They were bystanders within the meaning of our statute. The fact that the judge anticipated a shortage of jurors and asked the sheriff to request a sufficient number of competent, impartial, and qualified men to be at court to fill the panel therefrom. does not show a departure from the statute so long as the judge did not designate any particular man to be thus present. We think the prime purpose of the legislature was to reduce expense and promote speedy trials; and the course here adopted was a common-sense, practical, legal method, in the absence of any hint of fraud or unfairness. The method adopted saves time and expense and tends to speed the trial of causes pending, and to be tried.

We find no error in this record.

Affirmed.